## APRIL TERM, 1898.

CASE 2—APPEAL FROM CONTEMPT PROCEEDING—APRIL 23.

# Hendrick v. Posey.

APPEAL FROM FRANKLIN CIRCUIT COURT.

1. ATTORNEY'S LIENS—ATTORNEY-GENERAL.—Section 107 of the Kentucky Statutes giving to attorneys at law a lien upon claims in their hands for their fees is inapplicable to judgments recovered by the attorney-general in behalf of the Commonwealth.

2. JUDGMENTS IN FAVOR OF THE COMMONWEALTH—RIGHT TO COLLECT.—The appellant, who had recovered a judgment as attorney-general in favor of the Commonwealth, had no right, after the expiration of his term of office, to collect such judgment.

3. RULE ON ATTORNEY TO PAY MONEY TO MASTER COMMISSIONER—PERSONAL JUDGMENT—SUPERSEDEAS.—Where money has been paid improperly by the master commissioner to the ex-attorney-general upon a judgment in favor of the Commonwealth a rule absolute upon the latter directing him to repay the money is a personal judgment and may be superseded.

4. ATTORNEYS—SUSPENSION FOR FAILURE TO PAY MONEY ON A SUPERSEDED JUDGMENT.—In such a case it is error to suspend an attorney from practice until he shall have repaid such money, where he has superseded the judgment directing its repayment. And in response to petition for rehearing.

5. SUPERSEDEAS BOND—DAMAGES.—No damages will be awarded on a supersedeas bond where the person in whose favor the judgment was rendered has no personal or pecuniary interest in the recovery.

Hendrick v. Posey.

W. S. PRYOR, WM. GOEBEL, JOHN W. YERKES AND T. L. EDELEN FOR APPELLANT.

1 The appellant has rendered valuable and important legal services to the Commonwealth, resulting in the payment of large sums of money into the treasury. Upon any balance in his hands he was entitled to the well recognized lien of an unpaid attorney; to a particular lien for his fees in the case of Lair v. Kentucky Midland Railway Co., and a general lien upon the fund in that case or any other fund in his hand for his fees in the other cases. Welsh v. Hole, 1 Doug., 338; Wiley v. Cox, 15 How., 415; Weeks on Attorneys, secs. 368, 369, chap. 4; Turner v. Gibson. 3 Ark., 719; Griffin v. Eyles, 1 H. Bl., 122; Henry v. Traynor, 42 Minn., 234; Fillmore v. Wells, 10 Col., 228; 3 Am. St. Rep., 567; Horton v. Champlin, 12 R. I., 550; 34 Am. Rep., 722; Randall v. Van Wagman, 115 N. Y., 527; *Ex parte* Lehman, 59 Ala., 631; Fitzhugh v. McKinney, 43 Fed. Rep., 461; approving Wright v. Treadwell, 14 Tex., 256; *Ex parte* Price, 2 Ves. Sr., 407; Union Mutual Life Insurance Co. v. Buchanan, 100 Ind., 63; Christie v. Sawyer, 44 N. H., 298; Langdon v. Potter, 13 Mass., 319; Bryans v. Taylor, Wright, 245; Puckman v. Allwood, 44 Ill., 183; Ducett v. Cunningham, 39 Me., 386; Megary v. Funtis, 5 Sand., 376; Ely v. Harvey, 6 Bush, 620; Carroll Co. v. Cheatam, 48 Mo., 385; Ky. Stat., sec. 107; Stephens v. Farrar, 4 Bush, 13. The fees earned by the appellant in the Henderson Bridge Company case and in the telegraph cases arose from his employment by the present attorney-general. This employment the attorney-general had a right to make. Julian v. Bradley, and Rogers v. Bradley, 19 Ky. Law Rep., 114; 100 Ky., 344.

2. There is no order or judgment sustaining the attachment, no judgment against the defendant, no interpleader ordered, as asked by the bank in its answer, but the peremptory order directing the bank to pay the money to appellee, without any trial proceeding to support such an order, without proof, or even the formality of an affidavit.

3. The attention of the court is specially invited to the record brought up on the *certiorari*, as illustrating the style in which the Franklin Circuit Court dealt with the appellant and his pleadings.

4. The order suspending the appellant from practice was utterly

unwarranted from any possible point of view. Weeks on At-- torneys, chap. 4; *In re* Woolley, 11 Bush, 95; Walker v. Com., 8. Bush, 86.

5. The cross-petition was the proper pleading by which the appel-- lant should seek relief by mandamus against the auditor. It. was not a suit against the State, but the well recognized prac-- tice in Kentucky of a mandamus against the auditor to require of him the performance of a ministerial duty. Civil Code, sub- sec. 3, sec. 96; Phillips v. Keifer, 2 Met., 478.

6. The section, of the General Statutes referred to by counsel for the appellee, in this language: "Neither the attorney-general or any attorney of the Commonwealth, nor attorney at law employed by the auditor shall receive the money due and owing: to the Commonwealth from any public debtor, sheriff, or other officer," was significantly omitted from the Kentucky Statutes. Gen. Stats., chap. 92, sec. 17, p. 743. ·

.W. S. PRYOR IN A SEPARATE BRIEF FOR APPELLANT.

1. The action should not have been in the name of the commis- sioner, appellee, against Hendrick, but in the name of the Com- monwealth by the auditor or the attorney-general, and in such a proceeding the appellant could have presented his claim as a set off.

2. The litigation in this case presented a mere matter of claim on one side and a denial of the claim on the other, and, conse- quently, was not in any sense a contempt proceeding, but was a mere litigation between private suitors, and Hendrick had the right to appeal and supersede the judgment.

T. L. EDELEN, ALSO FOR THE APPELLANT IN A SEPARATE BRIEF.

Under the repeated rulings of this court, if Hendrick had been. sued by the Commonwealth he would have had the right to set. off against his admitted liability against the State, the latter's conceded indebtedness to him. If such an action had been brought by the Commonwealth the objection that Hendrick's claims had not been audited by the governor and auditor would have been immaterial, because a court of equity would either assume that to have been done which ought to have been done, or, would treat the condition precedent as immaterial, as the court, if seasonably applied to, would have compelled the audit- ing officers to audit Hendrick's accounts and allow him a rea-

Hendrick v. Posey.

sonable fee for his services. Having all the parties before the court, it might disregard the performance of that precedent condition, or assume it to have been performed. That it would have compelled action on the part of the auditing officers is settled by this court in the case of Rogers v. Bradley, 100 Ky., 344.

JOHN W. RODMAN FOR APPELLEE.

1. The admitted facts of this case fully authorized the court to make the order of January 28th; there is not an allegation of the petition that was ever denied by the pleadings of appellant. Rice v. Com., 18 B. M., 482; Bacon's Abridgement, vol. 1, title, Attorney, p. 306; *Ex parte* Burr, 9 Wheat, 529; Wilson v. Popham, 91 Ky., 327; Am. & Eng. Enc. of Law (2d. ed.), vol. 3, p. 780, note 4; same, 304, note; Guilford v. Sims, 13 C. B., 370; 76 E. C. L., 370; *In re* —————, 73 Wis., 602.

2. Under the statutes, neither the attorney-general nor any attorney for the State has any right to collect any money due the Commonwealth. Ky. Stat., secs. 4686, 145, 114; Gen. Stat., chap. 92, sec. 17.

3. As to the right of appellant to enforce his fees against the State, the appellee has nothing to say, except to protest that this right shall not be exercised to his prejudice.

4. The record does not show that the orders brought up by *certiorari* were ever entered by the Franklin Circuit Court at all.

5. The temper of appellant in his printed brief illustrates the contempt of court, for which he was punished by the trial court.

JOHN W. RODMAN FOR THE APPELLEE IN A PETITION FOR A RE-HEARING AND A MODIFICATION OF THE OPINION.

1. The papers brought up by *certiorari* were not a part of the record.

2. The appellant is entitled to damages upon the supersedeas bond.

W. S. PRYOR, WM. GOEBEL, JOHN W. YERKES AND T. L. EDELEN IN RESPONSE TO A PETITION FOR A REHEARING,

The position assumed by the court that the expiration of Hendrick's term of office operated by law to terminate any right he might have as attorney-general, is not borne out by the authorities. Numerous cases may be found in the records of the various courts where Commonwealth's attorneys have carried on

after the expiration of their term of office, litigation commenced by them while in office. Arnsparger v. Norman, Auditor, 19 Ky. Law Rep., 381. The record of the auditor's office shows that James Harlan, John M. Harlan, John Rodman and P. W. Hardin, who have held the office of attorney-general in this State, have collected their fees for services rendered during their terms of office at periods succeeding the termination of their terms of office, varying from one to six years.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

Appellant was Attorney-General of Kentucky from September 7, 1891, until January 6, 1896, and in his official capacity instituted suits in the Franklin Circuit Court in the name of the Commonwealth of Kentucky against the Kentucky Midland Railway Company, and recovered judgments against that company for taxes aggregating, with interest, more than $11,000, upon which judgments executions issued which were returned "No property found." At that time there was pending in the Franklin Circuit Court a suit by other creditors to subject the railroad to the payment of debts due to them by the company, and appellant, acting as Attorney-General of the Commonwealth of Kentucky, intervened in that proceeding, and set up the judgments due the State, and took the necessary steps to have the claim of the State declared a prior lien upon the railroad in the judgment directing its sale at the suit of creditors, and the railroad was sold under this judgment by appellee herein, as master commissioner of the Franklin Circuit Court, on January 4, 1897, and the sale was confirmed at the April term, 1897, and an order of distribution entered, directing appellee, as master commissioner, to collect the sale bonds that had matured, and out of the proceeds of the first instalment bond to pay to the Commonwealth the taxes adjudged to be due it; and, believing that appellant, as attorney of record for the Common-

wealth, had the authority to collect and receive the money, appellee, on July 21, 1897, paid to appellant the sum of $7,578.65, being a pro rata of 68 per cent. of the amount due the State, by a check payable to his order as attorney, and expressing in the face of the check that it was for taxes due the Commonwealth of Kentucky.     This check was deposited by appellant in the State National Bank of Frankfort, Ky., to his credit as attorney.     Subsequently the Auditor of the State demanded of appellee the payment of this money, and thereafter, on August 2, 1897, appellee instituted this suit against appellant to recover the money, alleging that it had been paid by him to appellant by mistake, and without authority of law; at the same time suing out a general attachment garnishing the money to the credit of appellant as attorney in the bank. On September 15, 1897, the bank answered, admitting that it had on hand to the credit of appellant the sum of $6,-255.31, and avowing its willingness to pay this sum as the court might direct, and on September 28, 1897, appellant having been duly summoned and failing to answer, the court entered an order directing the bank to pay to its master commissioner, the appellee herein, the sum so reported as being in its hands to the credit of appellant as attorney.     On October 2, 1897, a rule was awarded to appellee against appellant, returnable on the first day of the January term, 1898, to show cause why he should not pay into court the sum of $1,323,34. being the balance of the $7,578.65 paid to him by appellee, with interest thereon from the time he received it.     On January 3, 1898, appellant offered to file his response to the rule, and at the same time tendered and offered to file an answer, which was made a cross petition and counterclaim against S. H. Stone, Auditor of Public Accounts of the Common-

wealth of Kentucky, setting up, in substance, the steps
which he had taken in the case of Lair against the Ken-
tucky Midland Railway Company, and further alleging
that after the expiration of his term of office as Attorney-
General he had been employed by his successor as attor-
ney in a number of cases in which the State was interested,
then pending in the courts of the United States and the
Kentucky Court of Appeals, involving the validity of the
franchise tax under the act of 1892; that, as a result of his
services in these cases and in that of the Kentucky Mid-
land Railway, there had been paid into the treasury of
the State exceeding $60,000; that by virtue of his office
as Attorney-General, and under the laws in force at the
time he assumed the duties and took the oath of office, he
was entitled to 30 per cent. of the amount recovered and
paid into the treasury in the case of Lair against the Ken-
tucky Midland Railway Company; that by section 114 Ky.
Stats., he was entitled to 30 per cent. of the amount which
had been recovered and paid into the treasury in the other
cases in which he was employed; that the Auditor and
Governor had refused to pay him anything for his ser-
vices in these cases, excepting an allowange of $1,500 in
the case of the Western Union Telegraph Company against
Norman, Auditor, in the United States District Court; and
that he had the right to retain the funds which had been
paid to him by the master commissioner of the Franklin
Circuit Court for the satisfaction and payment of his fees
against the Commonwealth of Kentucky in all these cases,
which exceeded $11,367.50, after crediting the State with
$6,148.81; and in his cross petition against Stone, Auditor,
he asked that he be adjudged a lien thereon, for the sat-
isfaction of his fees, and for judgment therefor. A demur-
rer was sustained to the response, and the motion of ap-

pellee for a rule against Stone, Auditor, was overruled, and on January 27, 1898, the court entered an order requiring appellant to pay into court the sum of $1,323.34, at or before 9 o'clock of the next morning, to the entry of which order appellant excepted, and on the next day he tendered a response, in which he said that he had executed a supersedeas bond in the office of the clerk of the Franklin Circuit Court, which had been approved by the clerk of that court, suspending the execution of the judgment upon the rule issued against him, and avowing a willingness to execute any other bond required by law to make the plaintiff in the case secure pending an appeal to this court, alleging that he had in good faith retained the money paid to him by the master commissioner under the belief and by the advice of his attorneys that he had the legal right to retain it until the question was finally determined upon appeal to this court; whereupon the court adjudged that the response of appellant was insufficient, and, he having declined to respond further, it was adjudged by the court that he was in contempt of its orders, and that, in order to purge himself of such contempt, appellant must pay the sum of $1,323.34 into court, to be held by the court until the matter was finally determined; and, appellant having refused to do this, the court entered an order suspending him from practicing law before the Franklin Circuit Court until he should comply with the order of the court, or until it should be reversed by the Court of Appeals. And on this appeal we are asked to review the two judgments of the Franklin Circuit Court —the first entered at its September term, 1897, and the second at its January term, 1898.

Appellant's claim against the Commonwealth for professional services in the Kentucky Midland Railway case

arises under the law applicable to the fees of the Attorney-
General of the State as it existed prior to 1892, there be-
ing no claim that he was employed in this particular case
by his successor as attorney.   The statute in force at that
time regulating the fees of the Attorney-General provided:
"That in all cases where there are outstanding and unsat-
isfied judgments in favor of the Commonwealth of Ken-
tucky, upon which executions have issued and have been
returned 'No property found,' and upon all judgments and
decrees in favor of the Commonwealth rendered in chan-
cery suits or proceedings in any of the courts of this Com-
monwealth, upon which judgments and decrees have not
been made or paid over to the State, it shall be the duty
of the Attorney-General to investigate and inquire into the
condition of said claims and such judgments, and to take
all necessary steps by motion, suit, or otherwise, to col-
lect or cause the same to be collected and paid into the
treasury; and to this end he may employ such assistants
and attorneys in the various counties of this Common-
wealth as may be necessary to aid him in such investiga-
tions, suits or proceedings; provided, the fees and ex-
penses of the Attorney-General and such assistants and
attorneys as he may employ, shall be fixed and agreed
upon by the Auditor and Governor, and shall in no case ex-
ceed thirty per cent. of the amount recovered and paid into
the treasury."   See Gen. Stats., p. 186.   While the fees
alleged to be due him for services rendered in the Federal
courts and in the Kentucky Court of Appeals arose from
his alleged employment by the present Attorney-General
in 1896, after the expiration of appellant's term of office
as Attorney-General, under the authority derived from sec-
tion 114 Ky. Stats., which, in defining the duties of the
Attorney-General, provides:   "He shall investigate the

condition of all unsatisfied claims, demands, and judgments in favor of the Commonwealth, and take all necessary steps by motion, action or otherwise, to collect, or cause the same to be collected and paid into the treasury; and to this end he may employ such assistants and attorneys in the various counties as may be necessary to aid him in such investigation or collection. *The fees of such assistants as he may have shall be fixed and agreed upon by the Auditor and Governor*, be paid out of the State Treasury, and shall in no case exceed thirty per cent. of the amount recovered and paid into the treasury, * * * and no fee shall, in any case, be allowed or paid, except out of the amount recovered and paid into the treasury, unless that portion belonging to the Commonwealth is remitted by the governor." It is the contention of appellant that, as the Auditor and Governor had failed and refused upon demand to agree upon or fix the amount which should be paid to him as compensation for his services in these various actions, his name still appearing as attorney of record in the suit against the railroad company, he was authorized to collect the money paid over to him by appellee, and that, having collected it, he had the legal right to retain same, and has a special lien thereon for his services in the railroad case, by virtue of the provisions of section 107 Ky. Stats., which provides: "Attorneys at law shall have a lien upon all claims or demands * * * put into their hands for collection, or upon which suit has been instituted, for the amount of any fee which may have been agreed upon by the parties, or, in the absence of such agreement, for a reasonable fee for the services of such attorneys; and if the action is prosecuted to a recovery, shall have a lien upon the judgment for money or prop-

[2]

erty which may be recovered—legal costs excepted—for such fee; and if the records show the name of the attorney, the defendant in the action shall have notice of the lien.   *   *   *" And that he has also a general equitable lien upon this fund for the balance due him for professional services rendered in the cases in the Federal courts and those in this court at the employment of his successor in the office of Attorney-General.

We will first consider the question whether appellant, as attorney of the State can avail himself of the provisions of the statute referred to, or the general equitable doctrine as to liens of attorneys upon claims placed in their hands for collection, as against the Commonwealth. Section 4686, Ky. Stats., provides: "All public moneys and dues to the Commonwealth shall be paid into the treasury upon the written permit or authority of the Auditor as now or may hereafter be provided by law; and the same, when paid to the Treasurer, shall be by him, on the same day, deposited in one of the State depositories designated as hereinafter provided; and all permits shall be filed and carefully preserved by the Treasurer." And section 4688 provides: "No money shall be paid out of the treasury except upon the warrant of the Auditor, drawn upon the Treasurer as now or may hereafter be provided by law, and then only by the check of the Treasurer upon a designated State depository; and no such check shall be given by the Treasurer, even though the Auditor issues a warrant therefor, unless the law under which the money may be claimed expressly directs and orders that it shall be paid out of the Public Treasury. The Legislature evidently intended that the revenues of the State should be paid directly into the treasury. This is evident, not alone by the statutes bearing on this question directly, but is

abundantly shown by the carefully devised system which
has been provided by law for keeping track of the receipt
of every item of such revenue, and every disbursement
thereof.　Section 107 has no application to the Common-
wealth, and gives to attorneys no lien upon claims be-
longing to the State, placed in their hands for collection.
It was intended to regulate the rights of attorneys only
when dealing with corporations or private individuals.
In passing upon a question analogous to this in Com. v.
Cook, 8 Bush, 224, this court said: "As the government
of this State is established for the good of the whole, and
can only be supported by means of its revenues, courts,
in the construction of general laws, will not ordinarily
apply to the State such as upon their face seem to have
been intended only for declaring or regulating the rights
or remedies of private individuals, and which, if so applied,
will have the effect of obstructing or rendering more diffi-
cult the speedy collection of the public dues.　This rule
is founded, not only upon the highest public policy, but is
warranted by the firmly established maxim 'that general
statutes do not bind the sovereign unless expressly men-
tioned in them.'　Laws are *prima facie* made for the gov-
ernment of the citizen, and not of the State herself.　In the
case of Devine v. Harvie, 7 T. B. Mon. 443, this court ex-
pressly recognized and upheld this doctrine, declaring that
'it is a rule that the Commonwealth is not embraced by an
act which is made to operate between individuals, unless
there is something in the act which shows an intention to
subject the State to the same rule.'　This rule and the
reason therefor are laid down with great clearness in the
Supreme Court of the United States in the case of U. S. v.
Knight, 14 Pet. 315."　And, besides, the statute relied
upon by appellant as the basis of his contention in this

action clearly provides that *"no fee shall be allowed or paid except out of the amount recovered and paid into the treasury,"* and that such fees *"shall be fixed and agreed upon by the Auditor and Governor"* before they can be paid. These provisions of the statute are mandatory, and in asserting claims for alleged services against the State appellant must follow the remedy pointed out by the statute. If, as alleged, the Auditor and Governor refused to discharge the duty imposed upon them by law, to agree and fix the compensation which may be due him for his services legally rendered, he has the plain remedy by mandamus to require such action on their part.

The next question to be considered is, Did appellant, at the time he collected this money from appellee, have the legal authority to do so, or did appellee have the legal right to pay it over to him? Appellant's connection with the litigation in the railroad case arose wholly from his incumbency of the office of Attorney-General. When his term of office expired in January, 1896, by operation of law he ceased to have any right, as Attorney-General, to represent the Commonwealth in that case or any other. He was then *functus officio*, and the duties and responsibilities of that office at once devolved upon his successor. The record shows that this money was collected by him about eighteen months after the expiration of his term of office as Attorney-General. The judgment in the case of Lair against the Kentucky Midland Railway Company directed that this money should be paid to the Commonwealth, and appellee was not authorized by law to pay same to appellant, nor was appellant authorized to receive any part thereof. It was the duty of the master commissioner to follow the directions of the judgment, and pay it to the Commonwealth. Nor can it be doubted that the

Franklin Circuit Court had authority to coerce the pay-
ment of this money by summary proceedings.  But we are
of the opinion that the judgment of the court requiring
the payment of the money by appellant to appellee was a
final order, from which appellant had the right to prose-
cute an appeal to this court, and to execute, under sec-
tion 950, Ky. Stat., a supersedeas bond suspending the ex-
ecution of the judgment appealed from until his appeal
could be heard and determined; and, an appeal having
been asked, and proper bond executed before the clerk of
the court, which fully protected appellee from any loss dur-
ing the pendency of such appeal, the chancellor was in
error in thereafter entering an order suspending appel-
lant from practicing law during the pendency of such ap-
peal.  The precise question involved in the contention of
appellant had never, previously to that time, been deter-
mined by a judgment of this court, and we can readily un-
derstand how appellant, especially when so advised by dis-
tinguished counsel, believed that he had the right to col-
lect and retain the fund in question.  Certainly, there is
nothing in the record which in any wise impeaches his
good faith in the course pursued by him as to this fund, or,
in our opinion, to justify the order of suspension, after the
execution of the supersedeas bond.  The profession of an
attorney, is what he relies upon for his support in life, and
any act on the part of a court which tends to bring him
into disrepute in his professional capacity may affect, not
only his business as a lawyer, but also his character and
standing in every relation of life; and this right should
never be interfered with unless the facts of the case make
it unavoidable.  In our opinion, the order in this case was
not authorized by law.  For reasons indicated herein, so
much of the judgment appealed from as suspended appel-

lant from practicing law in the Franklin Circuit Court is reversed, but the judgments for the money in his hands is affirmed, and the cause is remanded for proceedings consistent herewith.

To a petition for a rehearing the following response was delivered by Judge Burnam:

We are asked by appellee to modify the opinion rendered in this case, because, it is insisted, the supersedeas bond which was executed by appellant on January 25, 1898, prior to the order suspending him from practicing as an attorney, is not properly a part of the record of this case, as no final judgment had been rendered before its execution, from which an appeal had been granted by the court below. As the rights of appellee are fully protected by the supersedeas bond executed by appellant on January 28, 1898, after the entry of the final judgment, from which an appeal to this court was properly taken, and which is found on page 36 of this record, it is not necessary to pass upon the validity of the bond executed on January 25, 1898, before the entry of the final judgment appealed from. That bond and the accompanying orders, made a part of the record on motion of appellant, were only considered by the court in passing upon the propriety of so much of the judgment appealed from as suspended the appellant from the practice of his profession. Appellee has no personal or pecuniary interest in the fund whose collection was suspended by the execution of the supersedeas bond, and is not entitled to damages, and the petitions for rehearing of both appellant and appellee are overruled.