CASE 123—EQUITY—FEBRUARY 24, 1883.

# Lucas v. Allen, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. A contract to induce public officers to act partially or corruptly, or to bias them in the discharge of their duties, is against public policy and void.

2. Appellant, an official of the city of Louisville, charged with the custody of the ordinance on the authority of which illegal assessments were made against citizens of that city, is forbidden by public policy to make a contract whereby, if enforced, he would receive money for the disclosures he made, and for services rendered against the interest of the city which employed him.

3. The contract partakes of maintenance. Although the agreement was before suit was brought, yet it was followed by the acts of appellant assisting appellees and their clients against the city of Louisville, under whose employment appellant was acting.

JAMES McGRAIN, WM. LINDSAY, AND JOHN & J. W. RODMAN FOR APPELLANT.

1. It is not with appellees to claim that appellant has acted in bad faith as an official to the city of Louisville, when he only discloses an attempt on the part of the city to improperly collect taxes from its citizens.

2. The money has been collected by appellees, and it is not for them to complain of bad faith when they have the results of the contract in their pockets. (13 Otto, 261; 2 Wallace, 70; 2 Phillips, N., 801; 17 Howard, 232; 7 Vesey, 473; 3 Cowan, 751; 13 Bush, 727; Ib., 411; American Decisions, vol. 15, 242.)

JOHN MASON BROWN FOR APPELLEE THOS. N. ALLEN.

1. The contract is champertous. (Gen. Stat., 180.)

2. It is against public policy and void. Appellant, an employé of the city, discloses facts operating to injure his employer. A contract

founded upon such a state of case cannot be maintained. (Brown v. Beauchamp, 5 Mon., 416; Cowper, 39; Stanley v. Jones, 2 Bing-ham; Pomeroy's Eq. Ju., sec. 402; Story's Eq., secs. 294, 296, 306; State v. Curle, 4 Dana, 384; 18 Jurist, 71; 6 Bing., N. C., 415; 5 *Ib.*, 666; Powell v. Knowlton, 2 Atkyns; Chitty on Cont., 675; 2 Wallace, 457; *Ib.*, 55; 21 *Ib.*, 448; 11 Otto, 108; 13 *Ib.*, 261, 277; 16 How., 314; 2 Wall., 45; 2 Phillips' Ch'y, 801.)

2. Although appellees have collected the money, still appellant cannot recover. (17 How., 232, 239; Pothier Obl., vol. 2, p. 3; Pom. Eq., vol. 1, 439; L. Rep., Ch. Div., 193; 2 Bush, 398.)

CHIEF JUSTICE HARGIS DELIVERED THE OPINION OF THE COURT.

Lucas was clerk of the board of alderman of the city of Louisville.

He professed to have information and knowledge which would lead to recovery from the city by tax-payers certain taxes which had been collected from them for an illegal purpose.

He so communicated to the Allens, who were attorneys, and alleges that, in consideration of information to be given by him, and of his aiding them in the preparation and prosecution of the suit for tax-payers against the city, they agreed to divide the fees they might receive in the suit, and that they had brought and succeeded in the action, and been allowed $18,439.25 as their fee, one half of which Lucas claims under the contract which was complied with by him.

Waiving the question whether the proof establish the making of the contract, the important and controlling question to be decided is, whether the contract, as stated by Lucas, is against public policy?

It is clear law that a contract to induce public officers to act partially or corruptly, or to bias them in the discharge of their official duties, is against public policy.

And principle, analogy, and authority unite in declaring contracts which have an apparent tendency to corrupt,

bias, tempt, or draw away public officials from the honest discharge of their duties as void, because in contravention of public policy.

And we are of the opinion that Lucas, who was an official of the city charged with the custody and power to copy and attest the very ordinance on the authority of which the illegal assessments against the citizens were made, was forbidden by public policy to make the contract, whereby, if enforced, he would receive money for the disclosures he made, and the services he rendered against the interest of the city, whose employment he was in, and to which the law requires him to be loyal and true so long, at least, as in that employment, and in so far as it furnished him, in the course of his duties, information by which he sought or may seek to profit himself. (Steele v. Curle, 4 Dana, 381; Oscanyan v. Ames Company, 13 Otto, 262, and authorities therein cited.)

This contract, in another aspect, is illegal. It partakes of maintenance in its worst form. (Brown v. Beauchamp, 5 Mon., 113.) Although the agreement was before suit brought, yet the agreement was followed, after its institution, by the acts of Lucas in upholding and assisting the Allens and their clients in the suit against the city.

Lucas borrowed the assessor's books, carried them to his private residence, had his daughter to copy them, for which no charge seems to have been made, and by his advice and intermeddling in the suit, to which he was not a party, and in which he had no legally noticeable interest, aided the plaintiffs and their counsel to carry it on. He not only, therefore, endeavored to save them expense by his friendship, but he did do it, and by advice, though not a lawyer, encouraged, aided, and, if he speak truly, was the prime

originator of the litigation, solely for what he could make out of it by selling his information and advice.

Such conduct, if tolerated, would sap the foundations on which official honesty rests, and legalize temptations which would lead from duty many an official who, without such inducements, might perform his duty.

And we cannot countenance the claim that it is an accomplished fact, and that, therefore, the proceeds of the illegal undertaking and maintenance of the suit ought to be divided. A court of equity can never be made the instrument of dividing such acquisitions between parties standing in the attitude which this record exhibits.

Wherefore, the judgment is affirmed.