CASE 8—ACTION TO RECOVER ATTORNEY'S FEE—MAY 29.

## Henry v. Vance, &c.

APPEAL FROM HENDERSON CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND DEFENDANT APPEALS. REVERSED.

ATTORNEY AND CLIENT—CONTRACT PROCURED BY FRAUD—DISCHARGE
OF ATTORNEY HAVING CONTRACT FOR CONTINGENT FEE—QUAN-
TUM MERUIT—DAMAGES FOR BREACH OF CONTRACT.

Held: 1. Where attorneys, having come into possession of a let-
ter making inquiry as to the heirs of a certain person who had
died in Nova Scotia, leaving a large fortune, made a contract
with the heirs, whom they had no trouble in identifying, un-
dertaking to recover their interest in the estate for a con-
tingent fee equal to 35 per cent. of what might be recovered,
the fee appears at first blush to be so unconscionable that slight
additional circumstances will be held sufficient to sustain the
charge of fraud in procuring the contract.
2. Evidence showing that the attorneys concealed from their clients
the fact stated in the letter that "full particulars" could be had
by inquiring of the writer of the letter, whose address was
given, was sufficient, unless overcome by a preponderance of

the proof, to preclude a recovery by the attorneys, who were discharged before rendering any other services than the writing of a few letters of inquiry, as the concealment of any material fact in the procurement of a contract constitutes fraud.

3. A client may discharge his attorney at any time, with or without cause, even where a contingent fee has been agreed upon; the remedy of the attorney, if the discharge was without cause, being an action on a *quantum meruit* for services already rendered, or, if no services had been rendered before the discharge, an action to recover damages for a breach of the contract—a declaration upon the contract as if constructively performed not being good.

R. H. CUNNINGHAM, FOR APPELLANT.

### POINTS AND AUTHORITIES.

1. As between an attorney and his client, transactions are fraudulent and void, which as between others are legitimate and proper. 3 Am. & Eng. Enc. Law, 2d ed., 332; Darlington's Estate, 30 Am. St. R., 776; 1 Perry on Trusts, 206; 1 Story's Eq., 310, 311, 312; Yardley v. Cuthbertson, 108 Pa. St., 395, and 56 Am. Rep., 218; Stockton v. Ford, 11 Howard, 232; 1 Cox., 125; 2 Vesey, 203; 9 Vesey, 292-296.

2. If an attorney deceive his client, or permit him to be deceived, he will not be suffered to profit by any agreement made by reason of such deceit. Sutherland v. Reeve, 151 Ills., 384; Graham v. Graham, 143 N. Y., 573; Smith v. Thompson, 7 B. Mon., 308.

3. Courts will strictly scrutinize transactions between attorney and client, and relieve the latter from an unconscientious bargain. Pollock on Contracts, 526, 531, 563; 2 Beach on Contracts, 1774; 3 Am. & Eng. Ency. Law, 332; 1 Story's Eq., secs. 310-311; Downing v. Major, 2 Dana, 228; Dodge's Adr. v. Foulks, 11 B. Mon., 179; Greenfield's Estate, 14 Pa. St., 489; Fisher v. Bishop, 108 N. Y., 25 and 2 Am. St. Rep., 357; Davis v. Webber, 45 L. R. A., 196.

4. The relation of attorney and client exists from the moment an attorney tenders services which are accepted.

5. Contracts for contingent fees must be reasonable, fairly made and without advantage and undue influence. Mechem on Agency, 844; Pollock on Contracts, 526, 531, 563; Taylor v. Bemiss, 110 U. S., 42.

6. A client has the right to discharge his attorney with or without cause, even from employment on contingent fee. Mechem on Agency, 856; 3 Am. & Eng. Ency. Law, 328.

7. In controversies between attorney and client, the attorney must show the fairness of the transaction and the reasonableness

Henry v. Vance, &c.

of the charge. Pollock on Contracts, 526, 531; 3 Am. & Eng. Ency. Law, 332-3; Cooley on Torts, 617; 1 Story's Equity, 310-311 and notes; Head v. Hargrave, 105 U. S., 45; Taylor v. Bemiss, 110 U. S., 42; Darlington's Estate, 147 Pa. St., 624 and 30 Am. St. Rep., 776, note; Elmore v. Johnson, 143 Ills., 513 and 36 Am. St. Rep., 401-415; Brown v. Mitchell, 11 Am. St. Rep., 748 and notes, 759; Arden v. Patterson, 5 John Ch., 48; North Chicago St. R. Co. v. Ackley, 171 Ills., 100 and 44 L. R. A., 177; Davis v. Webber, —— Ark., ——;45 L. R. A., 196; Greenfield's Estate, 14 Pa. St., 489; Darlington's Appeal, 86 Pa. St., 512 and 27 Am. Rep., 726; Fisher v. Bishop, 108 N. Y., 25 and 2 Am. St. Rep., 357.

8. The jury is to judge the value of services, and in doing so, to exercise common sense and general knowledge of transactions, and no expert testimony is required. Head v. Hargrave, 105 U. S., 45; Hargett v. Bracken Co., 3 Ky. Law Rep., 255; L. C. & L. R. R. Co. v. Ramsey, Ibid., 385; Morgan v. Wood, Ibid, 391; E. T. V. & G. R. R. v. Adams, 14 Ky. Law Rep., 862; Craig v. Durrett, 1 J. J. Mar., 366; Baum v. Winston, 3 Met., 129.

9. The attorneys not having performed the services contracted for, and being discharged, can recover, if at all, only upon a *quantum meruit.* Davis v. Webber, 45 L. R. A., 196; 3 Am. & Eng. Ency. Law, 427; W. U. Tel. Co. v. Semmes, 73 Mo., 9; Polsley v. Anderson, 7 W. Va., 202 and 23 Am. Rep., 613; Hargis v. Lou. Gas Co., 15 Ky. Law Rep., 369.

MONTGOMERY MERRITT AND MALCOLM YEAMAN, ATTORNEYS FOR APPELLEES.

## POINTS AND AUTHORITIES CITED.

1 Parties making contract presumed to know its legal character and effect. 1 Dana, 72.

2. The contract in this case is not disfavored in law. Wilhite v. Roberts, 4 Dana, 172; Ramsey, &c., v. Trent, 10 B. M., 336; Rust v. LaRue, 4 Littell, 416.

3. Appellees have the right to recover on the contract. Brodie v. Watkins 34 Ark., 545, 32 Am. Rep., 49; Bartlett v. Odd F. S. B., 79 Col., 218, 12 Am. St., 139; Durkee v. Gunn, 41 Kansas, 496, 13 Am. Rep., 300; Myer v. Cantierny, 41 Minn., 242; Kersey v. Garton, 77 Mo., 645; Majors v. Hickman, 2 Bibb., 217; Wheatly v. City of Cov., 11 Bush, 18.

4. Relation of client and attorney does not commence until it exists. 3 Am. & Eng. Ency., 316; Elsmore v. Johnson, 143 Ill., 36 Am. St. Rep., 401; Rust v. LaRue, 4 Littell, 411; Weeks on Attorneys, secs. 268 and 346; Davis v. Webber, 45 L. R. A., 196.

Henry v. Vance, &c.

Opinion of the court by JUDGE O'REAR—Reversing.

Appellees are lawyers, practicing under the firm name stated, at Henderson, Ky. Appellant, Mrs. Helen Henry, and her sisters Elizabeth Spidel and Isabella Gayle, lived at Henderson, Ky., and appear to have been people of quite moderate circumstances, and had always been so. Appellant was about 63 years old. A contract of employment, executed by appellant and her sisters, retaining the legal services of appellee firm in the matter of recovering the interest of these women in an estate in Nova Scotia in which they were entitled to participate, was executed January 23, 1899, by which appellees were to receive a sum equal to 35 per cent. of the sum recovered. Shortly after the signing of the contract, appellant and her co-heirs, conceiving that they had been overreached in the matter by the attorney representing appellee firm, notified appellees that their services were no longer required, and they were dismissed from further attention to the matter of the estate. This letter of dismissal was as follows: "Messrs. Vance & Vance—Gentlemen: That there may be no possible misunderstanding between us in the future in regard to your employment as our attorney as the heirs and distributees of the late Alexander Macfarlane, dec'd, of Wallace, Cumberland Co., Nova Scotia, and to make positive our intention in the matter herewith, and in emphasis of what we said to you on last Thursday, the 6th ultimo, withdraw all authority under the writing heretofore given you; believing that you took advantage of our ignorance of the facts, and obtained an unjust contract, which no court will uphold or sanction. We have advised the executors of our late uncle Alexander Macfarlane, dec'd, that any authority or attorneyship to you in that behalf has been wholly withdrawn, and that you have no authority to

act for us. We feel, of course, that we should pay you a reasonable compensation for your services. Resp., Helen Henry. Elizabeth Spidel. Isabella Gayle." Appellees declined to consider themselves discharged, and wrote an offer to continue all needed service under the contract, which was rejected by appellant and her sisters, and the services of appellees were not accepted, nor, indeed, rendered in the matter. Appellant then went in person to Nova Scotia, taking a family Bible and some old letters, and with these convinced those there interested of her relationship; and upon a distribution of the estate, appellant and her sisters received from the estate mentioned about $19,000, or $4,750 each. Appellees sued appellant to recover 35 per cent. of her part, or $1,662.50. The answer pleaded that the contract was procured by the fraud and deceit of appellee R. D. Vance, in that he took advantage of a communication meant for her, and concealed from her and her sisters the source of his information as to said estate, the name of the party who proposed to give all particulars upon inquiry, and the fact that such particulars could so be had, and overreached the women in the matter of the contract; that it was unconscionable and inequitable; that appellee magnified the dangers, expense, and uncertainty of appellant's realizing anything from the estate as well, as arousing her fears that independent inquiry by her, or others than a lawyer, would probably embarrass the situation. The answer further pleaded that, directly upon learning of the advantage taken of her in the matter, she and the other contracting heirs had repudiated the agreement, and so notified appellee, and that they declined to avail themselves to any extent of appellees' services, and in fact they rendered none. An issue was joined upon these allegations, and the case went to trial before

a jury. Appellant having the burden, introduced herself, Mrs. Spidel, and Mrs. Gayle, and Robert Henry and John Spidel, as witnesses, all of whom were present when the contract sued on was signed. The substance of their testimony is that about January 23, 1899, appellee, R. D. Vance, one of the members of appellee firm, was handed a letter by J. Henry Lyne, received by him from one J. W. Macfarlane, of San Francisco, Cal., asking for information concerning the names and addresses of the children or heirs of one Jacob Ackerly, who had married Mary Macfarlane, and removed from Nova Scotia to Henderson, Ky., and engaged in the tobacco business, before the war. The letter contained the further statement that one son of Ackerly had entered the Confederate army, and was killed at the battle of Shiloh, and that the oldest daughter of Ackerly had married a lawyer named Spidel. It further stated that these persons were heirs to a large fortune by reason of the death of the Hon. Alexander Macfarlane, the uncle of the people inquired about, and that he had died at his home, Wallace, Nova Scotia, December 14, 1898. The letter concluded: "For particulars, write to T. W. Macfarlane, 324 Montgomery Street, San Fransisco." Lyne remarked to Vance when he handed him this letter: "Here is something, Allen [meaning the spokesman's San Francisco correspondent] has sent here. I have no time to fool with it. If you can find these people, they will need a lawyer, and there may be something in it for you." Thereupon Vance telephoned to sons of Mrs. Henry and her sister Mrs. Spidel, asking how they would like to hear that they or their mothers had inherited a fortune, and, with only that much of information to the young men, then made an engagement for a conference with the parties that evening at appellees' office at 7:30 o'clock. At this meeting, appellee, R. D. Vance, (S. B.

Vance was not present, as it appears) made inquiry of the women touching their relationship to the decedent, which was satisfactorily stated. He read from the letter received by Lyne from T. W. Macfarlane, and the facts stated in the letter concerning the family sought for, these women confirmed, as identifying them as the heirs in question. Appellee did not disclose from whom he had received the letter, or the fact that "full particulars" could be had by merely inquiring of the Macfarlane, the writer of the letter, whose name and address were carefully given in it. On the contrary, when asked how he learned the facts stated in the paper from which he was reading, appellee avowed that he had learned it by accident. One of the sisters suggested to appellant that she write to some of her relations in Nova Scotia, with whom she had some personal acquaintance, and formerly some correspondence. To this suggestion appellee interposed the objection that that would never do, and that it would be better for a lawyer to write. He further urged upon the women the dangers of delay, suggesting that the estate was liable to be distributed at any time, and that the matter had already been considerably delayed; that the estate was liable to distribution, perhaps, within sixty days which was then apparently within two weeks of having transpired, and that prompt, careful and vigorous action was required. Furthermore, they were told by appellee that it was very doubtful whether there was anything in it,— those matters generally turned out so,—and he advised them not to put any money or expenses into it; that he would take it up for them upon a contingent employment for 35 per cent, of whatever was recovered, and paying all his expenses in getting up proofs, etc., and going out to Nova Scotia in prosecution of their claim. The women testified that they didn't know the meaning of the term used

in the contract, "35 per cent." and that they were ignorant
of the usual ·charges for such services, and were assured
by appellee that the fee proposed was customary and rea-
sonable.   As soon as they learned that the fee proposed
was unusual and exorbitant, and that all they were re-
quired to do was to identify themselves, and that the es-
tate, under the laws of Nova Scotia, could not be finally
distributed for eighteen months after the death of the
uncle, they notified appellees of their repudiation of the
·contract.   Mrs. Henry then went in person to Nova Scotia,
with the proofs and result stated above, at the expense
to her of some $400.   The court, at the close of this evi-
dence, required the jury, by peremptory instruction, to re-
turn a verdict for the plaintiffs (appellees), which was
done.

   This appeal presents these questions: (1) Did the facts
proven *prima facie* sustain the plea of fraud?   (2) If they
did not sustain the plea, had the clients the right to dis-
charge their attorneys at any stage of the proceedings?   (3)
Was appellees' cause of action on the contract, or for dam-
ages for a breach of it, or upon *quantum meruit?*

   The estate of the decedent was something more than
$129,000, it seems.   The services actually rendered by ap-
pellees in the matter before notice of appellant's renuncia-
tion of the contract consisted in writing a letter to the
California Macfarlane, which was returned for lack of
proper address; a letter to Dun's Agency, by which the
fact of the decedent's death, the value of his estate, and
the address of his executors, and the fact that he died in-
testate, were stated; then a letter of inquiry to the execu-
tors.   It appears that appellant and her sisters had lived
nearly all their lives in the city of Henderson, and their
sons were in business there, and, it would seem, all were

known by appellees.  At least, there is nothing to indicate that they had the least trouble in identifying these people as the heirs sought by the inquiring Macfarlane.  The identity being confirmed, it then appeared but the simplest matter to so notify T. W. Macfarlane, of San Francisco, and from him have the proffered information containing "full particulars" concerning the estate, which is shown by the initial letter to have been a "large fortune," "to a large part of which" these people were represented as being unquestionably entitled.  Of the $19,000 received by these women, 35 per cent., or $6,650, is seriously claimed by appellees under this contract as a fee.  At first blush, it would appear that such a fee as contracted for, under the circumstances, was unconscionable.  Therefore, slight additional circumstances will be held sufficient to sustain the charge of fraud in procuring it.  The concealment of a material fact whereby the other party is induced to enter into a contract which he would not have done if the fact concealed had been divulged may amount to a fraud as objectionable as if the benefited party had knowingly misstated the fact to induce the contract.  Mr. Bigelow, in his valuable work on Fraud, thus speaks of this phase of deceit:  "Silence under certain circumstances has the effect of an active principle.  It operates upon the opposite party now like some admission, now like some statements.  True, it is not representation, nor does it rest upon the ground of representation; but it is closely analogous, and is attended with legal consequences for the same reason, though of course with diminished force, which governs representation, to-wit, that it is an agency in effecting conduct.  The action taken may be said without a paradox, to be drawn out by the silence under the circumstances.  In a word the silence

Henry v. Vance, &c.

is a true cause, or one of the causes, of the action." Page
611.   Especially is this so when the concealment is an
evasion of a direct inquiry by the opposite party, he being
misled by the silence or evasion constituting the conceal-
ment.   Furthermore, when one soliciting or offering to con-
tract with another has knowledge concerning the facts
about which the contract is to be made, of which facts the
opposite party is ignorant, and purports to recite to the
opposite party a statement of those facts, that they may be
also fully advised before making the contract, yet conceals
any material part thereof for the purpose of inducing the
execution of the agreement, he will be held to have per-
perpetrated a fraud on the injured party, Biglow on Frauds,
472, 474, 475, 476; who can then either repudiate the con-
tract upon learning the truth, or recover damages, if any
were sustained.   In our opinion, the facts shown entitled
appellant to a verdict, unless appellees could successfully
refute them by preponderance of proof.

2. The relationship of attorney and client is so peculiar-
ly one of confidence and reliance, that it would not do to re-
quire a party to continue in his service one whom he dis-
trusts, or whose capacity he no longer believes in, nor to
permit the attorney, under such circumstances, to continue
the relationship, where the lack of confidence would seri-
ously impair his efficiency, and interfere with his full op-
portunity to serve the party and the court as his office re-
quires.   That the client has the right to discharge his
attorney at any time, with or without cause, even in a case
where a contingent fee has been agreed upon, can not be
well doubted.   Mechem. Ag., 856.   If the discharge is for
cause, the question of fee may become eliminated, or give
to the client even a right to an action over.   If the dis-

charge is without cause, and after the attorney entered up-
on and performed part of the services, he will undoubtedly
be entitled to recover at least to the extent of the value
of the services rendered. But generally the attorney
should be relegated to an action to recover on *quantum
meruit*, where he has been prevented by the client, or other
fact not his fault, from fully discharging the services con-
templated by his contract. Moore v. Robinson, 92 Ill., 491;
Duke v. Harper, 8 Mo., App., 296; Quint v. Mining Co., 4
Nev., 304; Scobey v. Ross, 5 Ind., 445; Telegraph Co. v.
Semmes, 73 Md., 9, (20 Atl., 127); Wilson v. Barnes, 13 B.
Mon., 330; and Bank v. Barclay (Ky.) 60 S. W., 853 (22 Ky.,
L. R., 1555). In the case at bar, if the question of fraud
in the procuring of the contract were eliminated, the ques-
tion should be submitted to the jury as to what, under
the circumstances, would be a reasonable compensation to
appellees for the services actually rendered before notice
of their discharge. And in estimating such value the jury
should consider the extent of services rendered, and those
to be rendered, allowing the contract price, abated by such
sum as is reasonably represented by the unperformed part
of the labor. In this connection it would be proper also,
to estimate, in arriving at that value, the fact, if it was
a fact, of their being prevented from accepting employment
from the other side by reason of their connection with
the cause of appellant. Should the facts on another trial
be substantially as shown in this record, then the following
instruction on behalf of plaintiffs ought to be given: "If
the jury believe from the evidence that the contract sued
on was fairly and understandingly entered into between
the parties, and that defendant without cause discharged
plaintiffs from further connection with the matter, and
that plaintiffs continued to hold themselves in readiness at

Henry v. Vance, &c.

all times to continue their services to completion, the jury will find for the plaintiffs $1,662.50, less such proportion of that sum as is reasonably represented by the labor and attention and expense that would have been required of plaintiffs to complete their undertaking, but which they did not do."

3. Where a contract of employment has been fairly made between an attorney and one thereby becoming his client, and before any services are rendered by the attorney he is discharged by the client, without cause, from further connection with the matter, the attorney must look to an action for a breach of the contract. A declaration upon the contract as if constructively performed is not good, and, we believe, is against both reason and the weight of authority. This is likewise true where there has been such partial performance as entitles the attorney to look only to an action on *quantum meruit*, as above indicated. The measure of damages may be, and frequently in such cases is, difficult to establish. That is equally true in many other contracts. As to what would be the resulting damages from such breach, where the action is for a breach of the contract, would necessarily depend upon the circumstances of the particular case. Carey v. Gnant, 59 Barb., 574; Telegraph Co. v. Semmes, supra; Badger v. Mayer, 8 Misc. Rep., 533 (28 N. Y., 765).

Other errors complained of are passed, for the reason that they are such as will not probably recur on another trial. For the reasons indicated, the judgment is reversed and remanded for a new trial under proceedings consistent herewith.

Petition for rehearing by appellee, overruled.