JAMES F. BRINE vs. CITY OF CAMBRIDGE.

Middlesex.   November 13, 1928. — January 3, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*School and School Committee.   Statute,* Construction.   *Words,* " Or,"
" And."

In the provision of G. L. c. 71, § 47, "Expenditures by the committee for
the supervision of play and games on land under the committee's
control, or for the equipment thereof, shall be deemed to be for a
public purpose," the word "or" should be construed to mean "and."
Hooded coats, shirts, "pants" and footless hose for the use of ten members
of a basketball team in a public school of over eight hundred pupils in
contests with similar teams from schools of other cities, some of which
were to be held on land not under the control of the school committee
in charge of the public school in question, were not school supplies
within the meaning of G. L. c. 71, § 48, nor equipment authorized
by G. L. c. 71, § 47; and a purchase of such equipment was outside
the authority of the school committee, although by G. L. c. 71, § 1, as
amended by St. 1921, c. 360, public schools are required to give instruc-
tion and training in indoor and outdoor games and athletic exercise.

CONTRACT upon an account annexed for $105.50.   Writ
dated March 25, 1927.

In the Superior Court, the action was heard by *Ham-
mond,* J., without a jury, upon an agreed statement of facts.
Material facts are stated in the opinion.   The judge found
for the defendant and ruled that upon the agreed facts the
plaintiff was not entitled to recover as matter of law.   The
plaintiff alleged exceptions.

*G. F. McKelleget,* for the plaintiff.

*P. J. Nelligan,* City Solicitor, (*J. E. Nally* with him,)
for the defendant.

SANDERSON, J.   This is an action of contract to recover
the purchase price of six hooded coats, ten basketball shirts,
ten pairs "B.B. pants" and ten pairs footless hose, sold by
the plaintiff on orders from the school committee of the de-
fendant city.   The case was submitted to the judge, without
a jury, on a statement of agreed facts, from which it appeared

that the plaintiff is a dealer in athletic goods from whom the school committee of the defendant city ordered and received the articles described at the prices charged, which are fair and reasonable. The goods were purchased by the committee for the purpose of loaning them to certain pupils of the Rindge Technical School, a public school of the city of Cambridge, to be worn and used by them during, and while practising for, athletic games and contests so long as these pupils might remain members of the basketball team representing the school. The title to the goods was to be retained by the school department of the city and, when any pupil to whom any of them should be so loaned ceased to be a member of the basketball team, the goods were to be returned to the school department to be then cleansed, repaired and loaned to some other pupil in the school so long as he should be a member of the basketball team. The articles in question were not purchased for the use of the pupils in general but only for the ten members of the basketball team. The number of pupils in the Rindge Technical School is eight hundred forty-four. It was the purpose of the school committee when these articles were purchased that they should be used by the members of the basketball team in athletic contests with similar teams from schools of other cities; some of the contests were to be held on land not under the control of the Cambridge school committee, and the articles purchased have been so used. The plaintiff, at the time these goods were ordered and delivered, had actual knowledge of all the purposes for which they were purchased. The judge ruled that on the agreed facts the plaintiff was not entitled to recover, and found for the defendant.

St. 1906, c. 251, first gave the school committee supervision and control of athletic organizations composed of pupils of the public schools and bearing the name of a school, and authorized it to determine under what conditions such organizations may enter into competition with similar organizations from other schools. St. 1919, c. 292, § 4, extended this control to other school organizations.

St. 1911, c. 314, first provided that "School committees

in cities and towns may expend money, as it is now expended for public school purposes, for the supervision of play and games on land under their control, and for the equipment thereof." This now appears as part of G. L. c. 71, § 47, in the following language: "Expenditures by the committee for the supervision of play and games on land under the committee's control, or for the equipment thereof, shall be deemed to be for a public purpose." At the outset the question arises whether the quoted section authorizes expenditures for both supervision and equipment or whether it may be for one but not for both. The context and main purpose of the act indicate that the word "or" should be construed to mean "and" so that the expenditures authorized are for both supervision and equipment. *Gaynor's Case*, 217 Mass. 86, 89, 90. *Marble* v. *Treasurer & Receiver General*, 245 Mass. '504, 508. *Lunt* v. *Aetna Life Ins. Co. of Hartford*, 261 Mass. 469. It is assumed that the word "thereof" in this statute was intended to refer to or include the equipment of play and games on land under the control of the committee.

St. 1921, c. 360, amending G. L. c. 71, § 1, first required public schools to give instruction and training in indoor and outdoor games and athletic exercise. This was based upon a petition for legislation to provide physical training for pupils in elementary and secondary schools of the Commonwealth.

The only authority given the committee to purchase articles to be loaned is contained in G. L. c. 71, § 48, which provides that "The committee shall, at the expense of the town, purchase textbooks and other school supplies, and, under such regulations as to their care and custody as it may prescribe, shall loan them to the pupils free of charge. If instruction is given in the manual and domestic arts, it may so purchase and loan the necessary tools, implements and materials." The articles described in the declaration could not be purchased by the committee to be loaned to pupils unless they come within the description of school supplies in this section. St. 1921, c. 360, did not purport to take the place of or to supersede the provision previously enacted relating to

athletic organizations in the schools. Such organizations and their activities seem to have been considered as occupying a separate field and to include those school teams which formerly were organized by the pupils with the object of representing the school in contests with other similar school organizations. As time went on it was deemed advisable to bring these organizations under the supervision and control of the school committee. The legislative intention to treat them as a separate class of activities is further shown by the fact that the new statute amended G. L. c. 71, § 1, and did not purport to affect G. L. c. 71, § 47. Supplies for teaching subjects required to be taught under §1 as amended, as well as for those which may be taught in the discretion of the school committee, would seem to come within the provisions of § 48. Indoor and outdoor games and athletic exercises must be taught, but it does not appear that athletic clothing is a part of the school supplies to be furnished for this instruction.

It is assumed that there are good reasons why members of a basketball team while practising or playing with other teams should wear articles like those purchased, although the record is silent on this point except in so far as an inference may be drawn from the reference to them as athletic goods, and from the fact that the committee bought them to be worn by members of the basketball teams and that they were so worn. But to hold that athletic clothing is to be included as a part of school supplies required by G. L. c. 71, § 48, to be furnished by the municipality, would be giving such an unusual meaning to the words "school supplies" that we ought not to reach that conclusion unless the legislative purpose to include it clearly appears. In *Affholder* v. *State*, 51 Neb. 91, 93, the court in construing the law of that State said: "'School supplies' . . . means maps, charts, globes, and other apparatus necessary for use in schools."

When instruction in the use of tools and cooking was introduced in the schools, St. 1894, c. 320, the Legislature by § 2 of that chapter provided that the committee might purchase and loan to pupils the necessary tools, implements

and materials for that work. When G. L. c. 71, § 3, providing for instruction in calisthenics, gymnastics and military drill, was enacted no provision was made for the purchase of appropriate gymnasium or military clothing, nor was any such provision made in connection with the provision for compulsory instruction in games and athletic exercises. St. 1921, c. 360. The purchase of the articles in question cannot be justified as an expenditure for the supervision of play or games under G. L. c. 71, § 47. The equipment authorized by that section to be provided is for play and games on land under the control of the committee, and this limitation as to place has some tendency to prove that athletic clothing such as is usually worn by competing teams was not intended to be included. If arrangements were to be made for games with other schools, some of the games would be expected to be played on grounds not under the control of the local committee. The statute authorized expenditures for equipment of play and games and not for the furnishing of articles of clothing to be worn in games and practice by individual players. To adopt the construction for which the plaintiff contends would require us to give the statute a meaning beyond the scope of the express terms of the act. We are of opinion that the articles purchased are not school supplies within the meaning of G. L. c. 71, § 48, nor equipment authorized by G. L. c. 71, § 47, and that the ruling of the judge was right.

*Exceptions overruled.*