## Bell County Board of Education v. Lee.

(Decided May 26, 1931.)

318

MARTIN T. KELLY and WALTER B. SMITH for appellant.

J. H. TAYLOR and R. L. POPE for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing on original appeal and affirming on cross-appeal.

On April 2, 1930, the Bell county board of education formally entered into a contract with the appellee, J. Henry Lee, by which it employed him to make an audit of the books of certain county officers for the four years ending December 31, 1929, in order to ascertain whether or not the sheriff and county clerk had "failed to pay any and all moneys collected by them for school purposes" to the school treasurer. The board agreed to "pay him for his services for his work in auditing said books a sum equal to 33 1-3% of all delinquent payments by the said Sheriff and Clerk, or a sum equal to 33 1-3% of any sum recovered . . . through litigation or compromise or otherwise." It was further stipulated that Lee should be given credit for and receive a commission on any money which the two former officers should pay to the treasurer of the board for the period covered during and after he should begin the audit of the books. The accountant agreed in the event of a suit to collect any delinquent payments that he would be "ready and willing at any time and all times under proper and sufficient notice to appear in court and testify as a witness in said case," at his own expense. It was further agreed that each party to the contract should pay one-half of all

attorney's fees if it should be necessary to collect the delinquencies by litigation.

The accountant at once entered upon the audit. On April 11th, the former sheriff, Helton, paid to the school treasurer $2,500, and on May 19th the further sum of $10,500, both on account of 1929 taxes. On June 6, 1930, Lee filed a report of his audit with the board showing that as of April 12, 1930, the former sheriff owed it $29,379.75, of which $14,229.78 was on account of 1929, and that included the $13,000 which he had paid. It does not appear that any further sum was paid by the officer or that any attempt was made to recover anything from him.

The board advanced Lee $200 near the commencement of his services. It declined further payment, and he sued the board, claiming it was indebted to him 33 1-3 per cent. of $29,379.75, the sum reported to be delinquent. The suit was defended upon several grounds and a counterclaim asserted for recovery of the $200 paid Lee. Near the conclusion of the introduction of the evidence, the court having indicated his views as to the law of the case, the plaintiff filed an amended petition alleging that his services were reasonably worth $2,500, and that he had incurred $1,000 expenses in the work, and testified accordingly. The court, over the objection of both parties, then instructed the jury to find for the plaintiff on a quantum meruit and his necessary expenses. Its verdict was for $750 and $500, respectively, a total of $1,250, credited by the $200 which had been paid. An appeal and cross-appeal are prosecuted, which brings the whole matter before us.

The board now charges that the contract is void because ultra vires and contrary to public policy; also, that it was improvident and unnecessary, and was brought about by the collusion of the appellee and the county school superintendent.

1. The last-mentioned ground may be quickly disposed of by saying that the evidence in our opinion falls far short of proving collusive fraud. We do not regard it as showing even bad faith on the part of any one associated with the execution of the contract.

2. A contract by which one employs another to render services in looking up evidence that would establish a claim or which is to be used on a trial is recognized as valid, unless its tendency is to prevent or impede

the due course of justice. The mere fact that the recovery of compensation is to be contingent upon the success of the suit is not sufficient to nullify the contract. Jones v. Henderson, 189 Ky. 412, 225, S. W. 34, 20 A. L. R. 1471; 6 R. C. L. 757; 16 A. L. R. 1437, 1440. Of course, if the contract partakes of maintenance or violates some duty, it is otherwise. Lucas v. Allen, 80 Ky. 681. If the contract partakes of the pernicious character indicated, it is to be held illegal and unenforceable as contrary to public policy—that variable principle, incapable of precise definition, addressing itself for application in each case, within a broad limit, to the good, common sense of the courts. The question is to be determined by the purpose and tendency of the contract. 6 R. C. L. 707; Gordon v. Gordon's Adm'r, 168 Ky. 409, 182 S. W. 220, L. R. A. 1916D, 576, Ann Cas. 1917D, 886. We perceive nothing inimical to public policy or the well-being of society in the contract before us. On the contrary, it is to the interest of the public welfare that public officials should be held strictly to account, and the courts look with favor upon all good-faith efforts seeking that end. Fox v. Lantrip, 169 Ky. 759, 185 S. W. 136.

3. It is a fundamental and elemental law that school boards and similar municipal executive or administrative bodies have only such powers as are expressly granted by law. Section 162, Constitution. But enumerated powers necessarily include those which are reasonably incidental and indispensable to their proper exercise and to the accomplishment of the purpose of their creation and existence and the object to be attained. Barrow v. Bradley, 190 Ky. 480, 227 S. W. 1016; Cf. Estill County v. Wallace, 219 Ky. 174, 292 S. W. 816. The school board is given independent control of the school property and funds. Fidelity & Deposit Company v. Board of Education, 228 Ky. 362, 15 S. W. (2d) 287. It is charged with the preparation of a budget and with the duty of providing funds sufficient to maintan their institutions and to expend the tax money solely for school purposes. Sections 4399a-4 et seq., Statutes. The power to tax carries with it the power to see that the taxes are collected and paid into its treasury. There is a broad discretion vested in the board (Breathitt County Fiscal Court v. Breathitt County Board of Education, 191 Ky. 437, 230 S. W. 914), which will not be interfered with by the courts so long as its action does not transcend its legal authority as above

outlined. But sometimes the line between legitimate and illegal action is shadowy.

There may be differences of opinion as to the wisdom of the policy and the propriety and providence of this particular contract; but it is clear to us that the board had the right to make a contract looking to the recovery of money due it by a delinquent officer, and to incur an obligation dependent upon that recovery. We have many cases upholding such authority either directly or by analogy. Illustrative are Commonwealth v. Towery, Sheriff, 215 Ky. 344, 285 S. W. 204, and Clarke v. Commonwealth for Use of Rockcastle County Board of Education, 233 Ky. 728, 26 S. W. (2d) 1041, where school boards sued to surcharge sheriffs' settlements of the school taxes. The power to institute such suits necessarily implies the power to prepare them for trial. By enacting section 4398a-1, the Legislature recognized this class of expenditure as a legitimate charge against school funds.

Unless it should be champertous, the contingency of compensation for professional services does not invalidate a contract. Such is a recognized rule of general application. It was tolerated by usage and common law, and has met with approval in this jurisdiction for at least a hundred years. Wilhite v. Roberts, 34 Ky. (4 Dana) 172; Wood v. McCann, 36 Ky. (6 Dana) 366.

The fact that the fiscal court had employed a salaried auditor (section 1840, Statutes), and that it is the duty of the state revenue agent to investigate accounts of all officers, and power is vested in him to institute actions for the recovery of money due by delinquent officers (sections 4262, 4263, Statutes), does not destroy the power of the board to protect itself or to undertake to secure money due it. Neither of those officers is under the control of the school board. The state superintendent of public instruction is an inspector and examiner of public schools and their revenue (section 4398a-1 et seq. Statutes), and had a representative examining the books of Bell county school officers at the time the contract was made with the appellee. Avoiding an express decision as to the extent of the state superintendent's powers, it may be said for the purposes of this opinion that the statute seems to comprehend only activity in relation to funds which have been collected for school purposes and the fiscal management by school officials. It is fairly

certain that exclusive power in the respect we have before us is not vested in him. It does not appear that his representative in Bell county was engaged in checking up on the former sheriff.

The manner of execution of this contract was in accordance with the law. It was within the powers of the board and cannot be ignored by it nor rescinded by the courts because perhaps it develops that it was a bad bargain. Trustees of Congregational Church of Evarts v. Board of Trustees of Evarts Graded Common School District, 230 Ky. 94, 18 S. W. (2d) 887.

4. But the contract is not to be construed as liberally as the appellee claims. Standing alone, perhaps the provision that the contingent compensation should be paid on any and all sums which the sheriff might pay to the board after its execution may warrant that construction. But it is provided that the compensation should be based upon "any sum recovered by the party of the first part against the said Sheriff." The word "recovery" in connection with contingent fee contracts is understood to be used in the ordinary sense of obtaining the thing sought, although a strict judicial meaning may be getting possession or enforcing a right through judgment. Wooldridge v. Bradbury, 185 Ky. 587, 215 S. W. 406. Taking the instrument as a whole, it is to be construed as contemplating the payment of compensation based on a percentage of only such money as might be discovered to be due and obtained by reason of the auditor's investigation and services. Its terms anticipated disclosure and action against the former officers and clearly did not include pay for what the sheriff recognized as being then due and which he might voluntarily pay.

The construction of the contract is fortified by the evidence as to the conditions under which it was executed. Although the sheriff had not for some time made the monthly settlements during 1929, as contemplated by section 4399a-8 of the Statutes, no demand had been made of him and it was not shown that the board had ever entered an order on its books requiring him to do so, as is also contemplated by the statute. The former sheriff testified he had been insisting on the school authorities examining his records that he might make a final settlement. There was contradictory evidence as to whether he had informed the superintendent as to the condition of the account and of having money to be paid. Mem-

bers of the board say they did not know whether there was any more money coming to it (due apparently to failure to make an investigation), yet it is not denied that the sheriff had advised the treasurer of the board that he did have some school funds in his hands. The county superintendent admitted that an estimate of the available funds for the year showed that he ought to have received twenty or twenty-five thousand dollars more than he had received up to that time. The sheriff had made annual settlements for other years as provided by the statute and had until May 1st, or a month after this contract was made, in which to make final settlement for 1929 taxes. Section 4135, Statutes. He withheld paying the $10,500 referred to under advice of the county attorney because of the conflicting constructions of the contract with the appellee and his claims.

As suggested, no action was taken by the board on the report of the accountant. While all the inferences are that the board, reposing confidence in the audit, would endeavor to collect the delinquencies reported, it did not expressly bind itself to do so. But if the former officer was in fact indebted to the board in any amount discovered and reported by the auditor and the board arbitrarily refused to endeavor to collect it, the appellee should not be deprived of his compensation by reason of that refusal. But as to what his remedy is presents some difficulty.

Contingent compensation contracts with which the courts are called upon to deal are usually those of an attorney and client. By reason of the statutory and common law giving a lien to a lawyer upon a demand or claim for unliquidated damages placed in his hands for collection and on any judgment recovered in an action instituted by him, and the right to recover a fee from a defendant under certain circumstances (section 107, Kentucky Statutes), there may be some difference to be recognized between a contract of that class and one made with an accountant proposing to discover the existence of a demand or claim. Yet certain legal principles are applicable to both classes.

We are not concerned with cases arising from a good-faith compromise or abandonment of claims, except to note that the general rule is that, where a client settles the claims or suit without any consideration to himself, the attorney may sue to recover damages or for the value

of his services on the quantum meruit. This is because the attorney is powerless to pursue the claim without consent of the client. 6 C. J. 745.

A distinction is recognized between an abrogation of the contract by discharging the attorney and a discontinuance or abandonment of the proceedings so that nothing is recovered. Annotations, 3 A. L. R. 472, 489, and 40 A. L. R. 1529, 1538. Yet the measure of compensation is generally recognized to be the same; that is, a quantum meruit. However, in some jurisdictions, as is shown in the annotations, in the latter instances compensation is to be measured by the amount which would have been recovered. The case of Evans v. Bell, 36 Ky. (6 Dana) 479, is cited as an authority, but it is by no means clear that it supports the conclusion except it is suggested that if nothing could have been recovered in the suit discontinued nothing was due under the contract.

In Gordon v. Morrow, 186 Ky. 713, 218 S. W. 258, the Governor discharged attorneys before completion of services being rendered under a valid contingent fee contract with the state, and it was held that the attorneys could recover the reasonable value of their services. That is the general rule where the attorney holds himself continually ready to serve and through no fault of his is discharged and thereby prevented from performing the acts or fully discharging the contemplated services which entitle him to the specific compensation. 2 R. C. L. 1048; Simrall v. Morton, 13 Ky. Opin. 822; Henry v. Vance, 111 Ky. 72, 63 S. W. 273, 23 Ky. Law Rep. 491.

The relations of the attorneys and the commonwealth in the Gordon case were, and those existing between private parties are, of such a nature that the discharge of the attorney or an abandonment by the client of the pursuit of the claim leaves the other party to the contract without remedy to enforce his right to the stipulated compensation by establishing the condition upon which it depends, as he has no authority of his own to continue the proceeding. So resort must be had to a quantum meruit as a matter of necessity.

While the cases are not altogether apposite, the principle of contingent liability in other relations than attorney and client and based upon production of a particular fund is enunciated and applied in Owens v. Curd, 192 Ky. 146, 232 S. W. 639; Fox v. Buckingham, 228 Ky. 176, 14 S. W. (2d) 421; and Hibbs-Kiefer Hat Company

v. Schneiderhan, 236 Ky. 470, 33 S. W. (2d) 304. In the Fox and the Owens cases the right of recovery was held to exist upon pleading and proof that the fund was not realized through negligence or lack of diligence of the other party. But that remedy is not available here, where the alleged delinquent party is a municipal body and not subject to such an action for damages.

The obstacle alluded to as preventing an attorney from recovering a contingent fee according to the terms of his contract, and which necessitates a quantum meruit, does not seem to us to be encountered under the conditions in this case, as we shall presently indicate. It is within the power of the accountant who claims a breach of the contract by the other party, after he has rendered the services for which he was employed, to establish the basis of his recovery. Therefore the reason or necessity for the rule which confines the measure of recovery in the instances noted to a reasonable value of the services rendered fails.

Another and perhaps more forceful reason for rejecting the right or limitation to the recovery on a quantum meruit—supplementing as well the rule that the happening of the contingency is usually a condition precedent to the right to compensation (6 C. J. 743)—is that the validity of the contract of employment can only be sustained upon the ground that it was for the purpose of bringing into the school treasury money which might not otherwise have been received, and hence that the contemplated expenditure of school funds was not for an extraneous cause. The authority of a school board is indeed limited, as contended by appellant, to making expenditures for school purposes, and it is upon the theory that they are of that nature that such contracts obligating the board to pay costs of collection out of fugitive school funds sought to be recovered are sustained. Certain it is in this case that the agreement was to pay the accountant out of the fund which might be realized, or, more technically expressed, obligating the board to pay him conditioned upon a recovery of money augmenting the school funds. There is no express contract to pay him the reasonable value of his services, and under familiar law no such contract can be implied.

We are of the opinion that it was an error to submit the case and award judgment on a quantum meruit.

According to the allegations of the petition and to plaintiff's claims, he has a potential legal right which cannot be enforced or made certain by reason of the action or inaction of the board of education. That right, if in fact it exists, ought to be recognized and not defeated by the arbitrary refusal to take action in good faith to bring about the contingency upon which it is dependent.

Truly, "Where there is a right, there is a remedy." As indicated, there appears two methods by which the appellee may protect himself and establish any right he may have.

It is disclosed by the record that the accountant is a citizen and taxpayer of Bell county. It is now well established that upon refusal of a fiscal body charged with the duty to protect public funds or enforce collections of delinquent sums a taxpayer may prosecute such an action. Anderson v. Burton, 174 Ky. 456, 192 S. W. 519; Shipp v. Rodes, 196 Ky. 523, 245 S. W. 157; Boyd County v. Cisco, 237 Ky. 534, 35 S. W. (2d) 849.

The appellant has no power coupled with an interest, as commonly understood, merely because his interest arises out of the proceeds of the transaction or his right to receive by way of compensation a certain per cent. of the collection. Andrews v. Traveler's Insurance Company, 70 S. W. 43, 24 Ky. Law Rep. 844. Indeed, because of its nature, he could not be given such a vested interest in the subject-matter of the contract as would empower him to proceed simply in his capacity as agent to pursue and effect the collection of only that part of the alleged delinquencies which represents his compensation. But assuredly he has a vested interest in the result of his services.

Under the unusual conditions—taking into consideration the character of one of the parties to the contract and its immunites; the nature of the subject-matter of the contract as distinguished from a private claim; the necessity of strictly confining the accountant to the measure of compensation stipulated in his contract of employment and which is dependent upon actual recovery; coupled with his agreement to share attorney's fees —he may have his remedy by assuming the burden of first recovering the fund upon which his compensation is

based. Perhaps this is novel; but we must bear in mind the old maxim:

"Boni Judicis est ampliare jurisdictionem: It is the duty of a good judge to enlarge his jurisdiction; i. e., to amplify the remedies of the law and apply its rules to the advancement of substantial justice."

It is a rule of practice that when a claim for damages resting in the hands of an attorney shall be settled over his head by a defendant having notice of his employment, the attorney in enforcing his right to a fee (which is usually based on the amount of the settlement) may proceed by instituting an independent action against the offending defendant, or by a pleading filed in the original action between the parties. Proctor Coal Company v. Tye & Denham, 123 Ky. 381, 96 S. W. 512, 29 Ky. Law Rep. 804; Newport Rolling Mill Company v. Hall, 147 Ky. 598, 144 S. W. 760.

There is no apparent reason why the principle of that rule of procedure should not obtain here. If the appellee can in fact prove that he discovered items due by the former officer to the board and they are collectible, we see no legal obstacle to his proceeding, after demand and refusal by the board, at his election (1) in a suit in his capacity as an interested taxpayer to recover the trust fund—for such is its nature—into the treasury of the school board and then securing his compensation by appropriate action; or (2) as one having an interest in the result by making the alleged delinquent former official a party to this action and, with appropriate supporting pleadings, reach the same end.

The judgment is accordingly reversed on the original appeal; and, since the appellee was rendered a judgment when under the state of the record he was not entitled to anything, it is affirmed on his cross-appeal.