# Board of Education of Bowling Green v. Simmons.

(Decided October 25, 1932.)

494

GEORGE W. MEUTH for appellant.

STOUT & HERDMAN for appellee.

Opinion of the Court by Judge Richardson—Reversing.

The city of Bowling Green, Ky., is a city of the third class. Section 3462, Ky. Stats., provides for the maintenance in this class of cities, a system of public schools at which all the children residing within the city between the ages of 6 and 20 may be taught at public expense.

Section 3469, Ky. Stats., imposes the duty on the board of education of the city to ascertain approximately the certain amount of money necessary to be used to defray the expenses of maintaining the schools, improving and constructing buildings, etc., and any liquidation of the liabilities during the fiscal year, and report the same together with the estimated amount to be received from the common schools and the interest on bonds, notes, etc., to the auditor or clerk of the city, within thirty days prior to the time prescribed for the levy of taxes to be made under the charter. It is the duty of the auditor or clerk of the city to report the same to the general council of the city, or the commissioners, if the city is operating under the commission form of government. Then it becomes the duty of the general council, or the commissioners, to make the necessary levy and collect the taxes to provide suitable buildings and to defray the general expenses necessary for school purposes, provided the levy for any one year shall not exceed $1.50 on each $100 of the value of taxable property within the city. The taxes when collected, together with penalties and accrued interest which may have been collected on same, are required to be paid to the board of education of the city or its authorized agent. Section 3474 confers upon the board of education the exclusive control of all school funds of the city, from whatever source the same may be derived, including the pro rata from the common school fund of the state. Section 3474 further provides:

"It (the board of education) shall have power to expend all moneys in the interest of public schools of the city."

Section 3478 vests in the board authority to establish and maintain a public school library; to purchase text-books for indigent children of the city, out of any funds coming into its hands; and "otherwise expend

such moneys in the interest of the public schools." It is written in section 4448, Ky. Stats.:

"When any family shall have any infectious or contagious disease, no member of such family shall attend any school until the trustees thereof shall allow them to do so; and during the prevalence * * * of dangerous epidemics the trustees shall order the school closed."

According to the census of 1930, the population of Bowling Green was 12,348. The school census of 1931 shows within the city 2,788 children of school age, or eligible to attend the city schools; 2,272 enrolled and actually attending, 1,506 of these in the primary grades, 400 in junior high school, and 366 in the senior high school. The board of education by an order attempted to create the position of nurse and teacher of health and physical education and to fix the salary thereof at $83.33 per month. Miss Lou Willa Honaker, in accordance with the order, was appointed for a period of one year; she accepted and entered into a contract with the board of education, conditioned that if her service proved satisfactory, it was to continue for one year. She was directed and instructed by the order to cooperate with the county board of health in the performance of her duties which, as set out in the order, were to inspect the children in the public schools of the city, their physical health and conditions, and to confer with their parents "confidentially in regard to the physical or other defects that interfered or threatened to interfere with their school work."

She was not at the time the holder of a certificate authorizing and qualifying her to teach in the common schools; her qualifications were those of a nurse and teacher of health and physical education.

Certain taxpayers filed this action in the Warren circuit court to have the order creating the position, the making the contract of employment, and the fixing the salary declared illegal and void, and to enjoin the board's payment of the school funds "for her service." Judgment was entered in conformity to the prayer of the petition, from which the board of education presents this appeal.

Evidence was heard on the trial in the circuit court, but, to dispose of the vital issues correctly, we do not

deem it necessary to consider the evidence heard touching the board's adoption of the order.

The order recites section 4369e-3, Ky. Stats., as the statutory authority of the board to create the position, make the contract of employment, and pay the salary.

It is vigorously and earnestly attacked because it so recites section 4369e-3. It is very plain that this section does not confer such authority. However, if other sections of the Statutes confer upon the board the required power, an incorrect reference to section 4369e-3 in no wise affected its validity.

It is the contention of the taxpayers that the order is within the inhibitions of section 184 of the Constitution. To sustain their insistence, Collins v. Henderson, 11 Bush, 74, and Board of Education of Covington v. Board of Trustees of Public Library, 113 Ky. 234, 68 S. W. 10, 24 Ky. Law Rep. 98, and Wilson v. Board of Education, 226 Ky. 476, 11 S. W. (2d) 143, are cited and relied on with earnestness and force. The pronouncement of these cases was predicated on the theory that the expenditures of the school funds therein authorized by legislative enactments to be contracted and expended were not appropriations "for the purpose of sustaining the system of common schools," "nor to the interest of the common school."

The clear intent of the act involved in Collins v. Henderson was to promote the sales of the product of Collins—a history—and in which the common schools were not interested, more than in any other text-book covering the same subject.

In Board of Education of Covington v. Board of Trustees of Public Library, the act undertook to authorize an appropriation by the general council of an appropriation of taxes, levied and collected for school purposes, for a public library, in which the school children had no more interest or right than any other reading member of the public.

The case of Wilson v. Board of Education involved a contract for the payment of a proportion of the cost of constructing a street which was to be used by the school pupils, only as members of the traveling public.

The contracts involved in those cases were plainly ultra vires, or beyond the constitutional power of the Legislature to authorize them, and not within the legal

authority of the agency intrusted with the control and expenditure of school funds to appropriate them for the purposes to which they were applied.

The quoted clauses of sections 3474 and 3478 grant plenary power to the board of education to appropriate the school funds of the city for whatsoever purpose that may be deemed by it, in its sound discretion, to be for the interest of the public schools. The power so conferred upon it is abridged by section 3464, Ky. Stats., to the extent that it declares the school funds shall be "dedicated to the use of public schools." In its intendment, section 3474 is identical with the limitation imposed by section 184 of the Constitution. Both the statutory grant of power and this limitation upon its power govern the board when it determines an object or purpose for which an appropriation is made by it, and such appropriation, where it is made for an object or purpose not named in the Statutes, must be for one which is, both in fact and in law, for the interest of the schools of the city. It may be, however, for an actual necessity or indispensable purpose, or it may be for one which is an ameliorative aid, but not indispensable, to the interest of the public schools. An example of the latter is a cafeteria (Goodman v. School Dist. No. 1, City and County of Denver [C. C. A.] 32 F. [2d] 586, 63 A. L. R. 92), or a gymnasium (McNair v. School Dist., 87 Mont. 423, 288 P. 188, 69 A. L. R. 866).

The board of education of the city is a quasi corporation. It is a governmental agency (Board of Education v. Scott, 189 Ky. 225, 224 S. W. 680) engaged in the business of the state (Board of Education of Jefferson County v. Board of Education of City of Louisville, 182 Ky. 544, 206. S. W. 869).

It may exercise only those powers which are expressly conferred by legislative enactment and also such as are reasonably incident to their proper exercise. Churchill v. Board of Trustees, 89 S. W. 122, 28 Ky. Law Rep. 162; Dalzell v. Bourbon County, 193 Ky. 171, 235 S. W. 360; Bell County Board of Education v. Lee, 239 Ky. 317, 39 S. W. (2d) 492.

The object or purpose of an appropriation when made by the board, if not one expressly named in the Statutes, must be one reasonably and necessarily germane to the interest of the schools. The purchase of basketball suits to loan to the pupils on the team is an

example of the expenditure of school funds not in the interest of the schools. Brine v. Cambridge, 265 Mass. 452, 164 N. E. 619. The cases of Collins v. Henderson, Board of Education of Covington v. Board of Trustees of Public Library, and Wilson v. Board of Education, supra, are also striking illustrations of the same class.

The Constitution and the Statutes charge the board of education of the city with the duty to maintain an efficient system of public schools within the city, and the clauses of the sections, supra, expressly empower it to expend the school funds "in the interest of the public schools." Clearly, the language of these sections was intended to vest in it power to make appropriations of the school funds for the accomplishment of a purpose other than those specifically named in the Statutes. Such expressed statutory power to appropriate the school funds "in the interest of the public schools" necessarily includes the exercise of the implied power reasonably incidental and indispensable to the proper exercise of the power so expressly conferred upon it to the accomplishment of the object to be attained. Barrow v. Bradley, Mayor, 190 Ky. 480, 227 S. W. 1016; Estill County v. Wallace, 219 Ky. 174, 292 S. W. 816.

If it is without authority in the exercise of a sound discretion to choose and determine an object or a purpose germane to the interest of the public schools of the city, other than those specifically designated in the Statutes, and make an appropriation therefor out of the school funds, then the insertion of the quoted clauses of the sections of the Statutes was idle and useless. Since the adoption of the first Constitution, the Legislature, by its enactments, has often exercised the constitutional power to vest an agency of the state with power to select, in its sound discretion, an object or purpose for which such agency may legally appropriate public funds. Even the "road sign" on the public highway, guiding the traveling public, is an apt illustration of the exercising of such constitutional authority of the Legislature. The Legislature for identical, if not for stronger, reasons, has the constitutional power to place the school fund under the control of the board of education and to vest it with the authority to select an object or purpose not specifically named in the Statutes, which in its discretion is to the interest of the public schools of the city, and to make an appropriation to accomplish the purpose. It is our conclusion that the

board is, by the quoted clauses of the Statutes, vested with the power to create the position and make the appropriation, if in its sound discretion the employment of a nurse and teacher of health and physical education was for the interest of the public schools of the city. This brings us squarely to the ultimate question whether the creation of the position and the employment of a nurse and teacher of health and physical education were to the interest of the public schools of the city in the sense in which this phrase is used in the sections of the Statutes, supra. The doing so was the act of the intellect of the board, and the presumption is in its favor. Hopkins et al. v. Dickens et al., 188 Ky. 368, 222 S. W. 101. To authorize the court's interference, it must appear that it exceeded its statutory power or abused a sound discretion, when it intellectually determined that it was to the interest of the schools of the city to create the position and make the appropriation and the contract of employment, and did so. Brown v. Bailey, 238 Ky. 287, 37 S. W. (2d) 58.

The board's creation of the position and the employment of a nurse and teacher of health and physical education are an innovation in the activities of the public schools of the city. But this fact should not be considered seriously nor weighed and charged against its acts.

From the beginning of man almost to the present, the world changed slowly, so slowly that any change was hardly noted. Any change which requires the expenditure of public funds or a departure from an established system is generally confronted by objections when first suggested or introduced. The stupendous import and meaning of the historical thesis, "And the child grew and waxed strong, filled with wisdom," were not grasped nor comprehended for centuries by the most learned and the philanthropical. Nowdays this divine pronouncement is fully understood and the serious-minded parent and the best thought of the ablest educators agree, man's experience demonstrates, and the welfare of the human family demands, that both the mental and physical capacities of the child in school be developed and its health safeguarded by efficient and proper teaching. It is not alone the duty of the home to build in the child the purpose of self-direction in respect to its physical welfare. It is the duty of the school which the child attends, every year, during the

greater portion of its youth, which is not of its own choosing, under conditions and circumstances not of its own making, to build in the habits and life of such child self-direction in respect to its physical well-being. Its health and physical development while in school are essential and indispensable, not only to the child's mental development, but to the conduct and success of the school. Its actual health and physical condition should be of no less concern to the governing authority of the schools than its mental growth. The primary and predominant object of the existence of the school is to create out of the pupils a more perfectly developed human family—mentally, morally and physically, the trinity of education—to make a better community, nation, and world for the sake of a nobler future. In order to consummate the trinity, it is therefore the superduty of the school to teach and to instill into the pupils the notion that health and mental and physical growth are concomitants. It is true a child may become a Bacon in intellect without being a Samson in strength, but without health such one is in fact a weakling. The service and aid which a nurse and teacher of health and physical education may render the pupils of the public schools of the dimensions of those of a third class city are many and varied. Some of them are: To (a) detect and prevent communicable disease; (b) interest the pupils in immunization; (c) discover correctible and incorrectible physical defects of pupils; (d) discover them early and guide the pupils to appreciate the necessity of the correction of both physical and mental defects; (e) interest pupils and the parents in matters of community and personal hygiene and the principles of healthful living; (f) aid and promote the physical development of all of the pupils of the school, and (g) afford a skillful, experienced supervision of their health.

Considering the inexorable duty of the schools to supervise, to guide and direct, to guard and protect, the health and physical growth and development of all of the pupils, and of the magnitude of the needs of the service of nurse and a teacher of health and physical education, in connection with the schools of the city and the purpose of the existence of the schools, together with our general knowledge of the common diseases which generally affect school children, and the communicability, frequency, and recurrence of these diseases, and their serious and ill effects, when prevailing,

502

we are convinced, and it is our conclusion, that the creation of the position of nurse and teacher of health and physical education, and the employment thereof as set out in the order of the board, were, in fact and in law, for the interest of the schools of the city, within the meaning of section 184 of the Constitution and the sections of the Statutes, supra. Crane v. School Dist., 95 Or. 644, 188 P. 712; Alexander v. Phillips et al., 31 Ariz. 503, 254 P. 1056, 52 A. L. R. 244; McGilvra v. Seattle School, 113 Wash., 619, 194 P. 817, 12 A. L. R. 913; State ex rel. v. Brown, 112 Minn. 370, 128 N. W. 294; Hallett v. Post Printing & Publishing Co., 68 Colo. 573, 192 P. 658, 12 A. L. R. 919; Bell County Board of Education v. Lee, supra.

Section 2054a-13 provides for and authorizes county health officers to make frequent trips over the county and to visit the schools of the county, and to make such inspections of the premises, etc., as the county and state boards may determine are necessary. It is argued by the taxpayers that this section affords ample and complete health service to the city schools of the city, and that it must be looked to by the schools of the city for the service contemplated by the order of the board of education.

Section 2054a-13 is not a part of either the common school law or the charter of the city. It cannot be treated or considered as an abridgement or a limitation of, or a substitute for, the power of the board to appropriate the school funds as authorized by the clauses of the sections we have heretofore quoted. It does not disclose the purpose of the Legislature to provide a system of inspection of schools, nor does it afford to schools of the city that character of service contemplated by the order of the board of education in the present case. Hallett v. Post Printing & Publishing Co., supra.

The affidavits of the secretary of the school board which seem to have been admitted as a deposition, by the agreement of parties, show that the board's budget included a sum sufficient to provide funds with which to pay the salary of the nurse and teacher of health and physical education. The board of education has no right to expend any more money therefor than it receives from the state, augmented by that obtained locally through its budget application. It must live

within its annual income. It must operate on the pay as you go plan. It cannot raise, in and of itself, revenue with which to defray the expenses of the schools of the city. If the board has on hand school funds, not otherwise appropriated by the law, and its orders, to another purpose, it may out of such funds pay the salary of the nurse and teacher of health and physical education as authorized by its order. Hockensmith v. County Board of Education, 240 Ky. 76, 41 S. W. (2d) 656.

Lastly, it is argued that Miss Honaker does not hold the required credentials authorizing her to teach in the public schools. The character and nature of the service to be performed by her, under her contract of employment with the board, do not call for, nor require, the educational qualifications of an instructor or teacher of the schools of the city. The service required by her contract with the board of education does not demand that she possess the required qualifications of a teacher or instructor. No authority need be cited to sustain the statement that the Statutes applicable to and controlling the qualifications of a teacher engaged in teaching the curriculum do not apply to all the employees of the board. The position of nurse and teacher of health and physical education is of this class.

For the reasons herein set forth, the judgment is reversed for proceedings consistent with this opinion.

Whole court sitting.